UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. |
| | ) | 1:22CR72-01 |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| 1) TIMOTHY MICHAEL DEVER, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Timothy Michael Dever appears before the Court for

sentencing for making interstate threats to kidnap or injure others in

violation of 18 U.S.C. § 875(c). Violations of this statute typically

involve a single victim with whom a defendant has a personal grudge,

or hate speech directed at a member of a protected class. This case is

very different, both in scope and in content. Dever placed dozens of

local victims (and over 900 nationally) in reasonable fear that armed,

anti-government, conspiracy theorists might invade their homes and

"arrest" them for a cash bounty because of the victims' dedication to

public service. The Government requests that the Court impose an

upward variance because the severity of the offense conduct greatly

Case 1:22-cr-00072-MR-WCM    Document 153    Filed 08/17/23    Page 1 of 23

exceeds that typically found within the applicable guideline range. But more than that, his conduct affronted democracy and due process.

## The Guideline Range Fails to Fully Account for the Seriousness of the Offense

The threats contained in the so-called "Writs of Execution" were chilling. They declared that the victims had been "convicted" of felony offenses by a secret "Environmental Court." *See* PSR, Ex. 2 (Doc. #148-2). Using quasi-revolutionary rhetoric, the documents declared the victims to be "enemies of the people" due to "crimes against humanity, war crimes, genocide, and traitorous treason." *Id.* at 3. The pronounced punishment for these "strict liability" crimes was up to 30 years' imprisonment or *death*. *Id.* at 3, 14. Worst of all, they notified the victims that they were subject to "citizens arrest" by anyone willing to collect a $10,000 bounty ($20,000 for attorneys), and that those arrests could be conducted without a warrant within 30 days of receipt of the writ. *Id.* at 2, 3, 14. The Defendant threatened, "You must get your affairs in order and be prepared to plead for mercy before the tribunal." *Id.* at 1.

The writs purported to be sent by a secret, nefarious-sounding organization that audaciously claimed to speak for "the people." The

cover letter was emblazoned with an official-looking logo for the "People's Bureau of Investigation," or, "PBI." *Id.* The so-called "Environmental Court" claimed to have a "25-member independent Grand Jury of the people" who convicted the victims without trial or due process. *Id.* at 3. The writs warned that the victims had been targeted by a large group of people and that *anyone* willing to abduct the victims would be rewarded with a sizeable cash bounty.

Any victims who were curious about the PBI could, with a quick online search, find the PBI's website and discover that the organization's true aim was to overthrow the government. *See* PSR, p. 12 (Doc. #148). Even worse, such victims would discover that the PBI had "doxxed" them by posting their names, addresses, telephone numbers, and other personal identifying information, making it easy for those motivated by the bounties to find and "arrest" (kidnap) them. *Id.* at 9–11. Each victim was essentially threatened twice — once upon personal receipt of the threatening writ, and again when they were publicly identified and publicized by the PBI for arrest.

The victims were threatened by an organization, not just an individual, making the threats more menacing. The defendants' threats

were intended to be anonymous as they hid behind the mask of being "of the people." The secretive and crowd-sourced nature of the writ's origin exacerbated the threat. A person targeted by a threat from a *known individual* can take safety precautions such as reporting the assailant to the police or seeking a protection order from the court. One threatened by an *anonymous individual* can take some comfort when law enforcement undertakes to identify and prosecute an unknown perpetrator. But a victim who is targeted by an *anonymous organization* such as the PBI has greater cause to fear — especially when the anonymous organization publicly posts a cash bounty for *anyone* willing to collect. Who might come for them in the middle of the night? And in what numbers? Will the prosecution of Dever and Moody mark the end of the threat, or will the victims continue to fear that others will complete the task despite (or, perhaps, *because of*) the defendants' incarceration?

These threats also required extensive premeditation and deliberation. Unlike many threats that are tantamount to guttural snarls in the darkness, these threats were backed by a well-documented ideology, lengthy treatises, training videos, and soldiers willing to do

their commander's bidding. This made the PBI's threats even more ominous. The Defendant didn't simply lose his temper and say something he later regretted in the heat of the moment — his threats were the result of long-term planning, preparation, and training. The Defendant had a self-declared mission with an abundance of zeal, and the victims stood in the way of his goal of wiping away our government.

An upward variance is necessary due to the unusually menacing nature of the threats. Most victims of this crime are targeted by an individual, but the 900+ victims in this case were hounded by a secretive, anti-government group whose stated goal is to overthrow the government and remove, arrest, and possibly execute all people currently engaged in public service. The harms caused by initial threats were compounded by doxxing the victims and placing a cash bounty on their heads to encourage *anyone* to collect the reward for kidnapping them. The severity of this threat is not adequately addressed by the guideline range.

### The Guideline Range Does Not Fully Account for the Number of Victims

The sheer number of victims is staggering. Moody, Dever's agent in Western North Carolina, served Dever's threats to at least 57

victims, most of whom were local public servants. *See* Attachment A, sealed Doc. #150, filed as "List of Victims by Name and Position." Many worked in the justice system — judges, sheriffs, and district attorneys. Others were local (and, often, first-time) politicians — county commissioners, aldermen, and mayors. All had their personal information posted on the PBI website and their personal safety threatened.

But Moody was just one of many PBI "agents" issuing these threats at Dever's direction. Dever's PBI website directory of served victims contained over 900 victims' names from approximately 32 different states. PSR, p. 11 (Doc. #148). The Defendant ordered his followers to serve every public servant with these threats in order to "abolish our government." *Id.* at 13. The Defendant published the documents, trained his supporters how to serve them, promised monetary rewards, and provided the means to post his victims' personal information on his website.

An upward departure or variance is warranted because the applicable guideline range does not fully account for the number and nature of the threats. The guideline range includes a 2-level

adjustment because the crime involved "more than two threats." U.S.S.G. § 2A6.1(b)(2).  Moody is directly responsible for threatening at least 57 victims, and Dever is responsible for threatening over 900.  The Sentencing Commission recognized that "offenses covered by this guideline may include a particularly wide range of conduct" and suggested that courts consider departures when an offense involves "multiple victims."  U.S.S.G. § 2A6.1(b)(2). Appl. Note 4(A) and (B)(iv). Dever's conduct involved substantially more than what is needed to trigger the 2-level enhancement, so an upward departure or variance is necessary to better account for the seriousness of the offense.

### The Offense Conduct Also Threatened American Democracy and the Rule of Law

Despite cloaking himself in patriotic-sounding rhetoric, the Defendant's vision for a new government was an affront to American democracy.  He was not too keen on things like due process, the presumption of innocence, or the right to an appeal.  His "writs" declared that their victims were convicted by a secret grand jury without trial, that they were guilty under a "strict liability" theory of crimes that carry the death penalty, and that their "court" was not subject to appeal.  PSR, Ex. 2, pp. 1–3, 9, 14 (Doc. #148-2).  If the

victims failed to vacate office, sign their acknowledgement forms, and pay $250,000 fines, the PBI would consider their silence to be "consent" under their jurisprudence. *Id.* at 2, 13. Once arrested, the victims could only "plead for mercy before the tribunal." *Id.* at 1. The Defendant claimed to be a patriot, yet he advocated for the worst aspects of tyranny.

There were many victims of this crime, including American democracy itself. The direct victims were public servants, most of whom were elected to serve; the indirect victims were all Americans who enjoy the right to vote. The attacks on this class of people were designed, as Dever stated in one of his training videos, to "abolish our government." The writs were a means to that end. The Defendant believed the victims to be "enem[ies] of the people by default" merely because they were "elected official[s]." *Id.*

An upward variance is necessary because Dever harmed more than just the direct victims — he targeted American democracy and the rule of law. Hate crime legislation provides for enhanced penalties because such crimes victimize both individuals and groups belonging to protected classes. The American systems of government and rule of law

are not protected classes, but Dever's actions threatened more than just the direct victims. The guidelines fail to account for the broader impact of Dever's vitriol.

## It Was Not About Water Quality

The Defendant threatened the victims because they were civil servants, not because he hoped his actions would improve water quality. "Convicting" the victims in their sham "environmental court" was a means to removing the government as a whole — it was not about water pollution. The water quality complaints were nothing more than the sovereign-citizen equivalent of taking down Al Capone for tax evasion.

The writs themselves are the best proof that the Defendant was more anti-government than pro-water. The cover letter rants about how the government is really a corporation infiltrated by English nobility (or "BAR agents"). *Id.* In fact, the cover letter barely mentions "water." *Id.* The "Writ of Execution" captions the bogus court case as, "People vs. Fauci et. al.," implying that they take issue with vaccines introduced into "a human body of living water." *Id.* at 2. The language that follows rages against the 5G cellular network, GMOs, glyphosates,

and canola oil.  *Id*.  A victim served with these papers would be hard-pressed to conclude that the PBI's primary concern is water pollution.

Very few of the victims who received the writs had anything to do with the protection of water quality.  Among the list of local victims were judges, prosecutors, police officers, school board members, and even some bankers and health care providers.  *See* Attachment A, Doc. #150.  Dever's online training focused on serving sheriffs, not officials responsible for protecting water quality.  *See* Attachments B (YouTube video entitled, "How to Lawfully Arrest a Sheriff, a judge, a President a governor, a mayor a congressman Fauci, Gates, media CEO's…ALL are convicted in the highest court on the land!") and C (transcript of the video in Attachment B).[1]  If local water pollution was the primary issue, why was the U.S. Postmaster General among the victims?  *Id*.

The PBI's website clearly demonstrates that the organization's true aim is the elimination of the United States government, not the protection of drinking water.  The picture on the "documents" page of Dever's website lists many targets for the PBI's ire, such as the "Biden regime," Congress, the IRS, the FBI, the CIA, the Fed, the RNC, the

---

[1] These attachments were provided to the Court in advance of the sentencing hearing.

DNC, MSNBC, CNN, FOX, state capitals, Antarctica, Maricopa, and Area 51.  PSR, p. 12 (Doc. #148).  All that anger, but nothing having to do with water.  His goal was to "throw off [the] Government," not protect drinking water.  *Id.*



PSR, p. 12 (Doc. #148).

## Dever Advocated for Violence Against Civil Servants

Victims receiving the writs had ample cause for fear. The writs promised kidnapping, detention, and even the death penalty. But the contents of Dever's cell phone were equally disturbing. The FBI recovered many conversations from the Defendant's phone wherein Dever discussed arresting, and even killing, government workers. Some examples are contained in the PSR:

> For example, DEVER said, "We need lots of tarps . . . You don't reform communist [sic]. You kill them" and, "They need to be lead [sic] to the tarps." In another chat discussion, DEVER sent Class multiple pictures of a pistol and referred to it as "an appropriate gun to begin the end of tyranny and set the tone." DEVER followed with, "I have a stack of tarps as well. You [Class] arrange the meeting. I would like to provide the gun to the trigger man." DEVER also recorded a phone conversation he had with Charles Moody, during which DEVER told Mr. Moody that, "He [referring to Class] talks about . . . in a perfect world, I should be able to go down to the Marshals and tell them that we're gonna arrest the judge, and then we're gonna arrest the prosecutor, and we're gonna take them out back and shoot them in the head."

PSR, Doc. #148, pp. 16–17. These were not the only such messages. Below are some examples of Dever's violent communications extracted from his phone:

# Table #1: Messages Sent by the Defendant

| DATE | MESSAGE |
|------|---------|
| 7/26/2022 | Until someone covers a traitor in tar and feathers then hung outside a capital people are not going to wake up entirely.  Once that happens all will be well. |
| 9/16/2022 | The FBI comes for my ass they better pull the trigger first.<br>…<br>They gonna have to get me from behind.<br>…<br>I have no battles.  They come at me I pull the trigger first.  Leave me be and no-one has a problem. |
| 10/26/2022 | The PBI investigates the crime and exposes it. Someone else has to deal with the rest. I wouldn't mind seeing some Tar and feathering. Whatever happened to that? |
| 11/1/2022 | In my opinion combining what happened to Chucks wife Darris and your vast knowledge, the focus should be on arresting the judge and the prosecutor. We the people need to arrest the real criminals.  It may be a lofty idea but it would be proper justice based on the facts. |
| 11/3/2022 | Gotta break ground. The father has anointed you and has assigned you the task. You are an integral component in restoring the Republic. Get Nick to make something big happen. We have to free the slaves. We met with Rod Class for 5 hours. He has the tools, knowledge and expertise to have the Marshal cuff a judge and prosecutor. We will be considered and made into terrosist unless we get what's in the video to happen. We need ALL of people outraged. 99% will come against the 1%. We the people win! No Trump needed. WE THE PEOPLE! WE THE PEOPLE! WE THE PEOPLE!!! |
| 11/10/2022 | We have no governments! They are so-called governments. They are crown corporatios that usurped the republic who are mearly acting as governments. You might as well restore Mayor McCheese. He has the same authority as any of |

| | |
|---|---|
| | these treasonous governors and mayors. One can not restore confidence in an enemy combatant acting as a government. I don't think you know how deep this goes. You need to watch more of Rods videos. THERE ARE NO GOVERNMENT MUNICIPAL LEVELS TO RESTORE CONFIDENCE IN! There are only levels of usurpers acting as public servants within the so-called governments. You want to restore mass murdering treasonous scum into a girl scouts. Corporations can NOT BE GOVERNMENTS! Foriegn esquires/BAR agents of destruction can not reside in our governments. YOU DON'T RESTORE COMMUNIST CONTROLLING TRAITORS INTO God fearing members of the republic. You wipe your ass with them! Rod knows. We need lots of tarps! They put us in private prsion camps known as out homes! They are commiting mass genocide with water, jabs and more. You don't reform communist. You kill them. |
| 11/12/2022 | The prosecutor and judge are guilty of about 20 crimes. |
| 11/16/2022 | They need to be lead to the tarps Rod! |
| 11/19/2022 | I think I have the one [federal court] clerk freaking out a bit. I told her about public law 92-500 and the fact that Darris was attempting to do whats right. I told her that her kids neighbors and family are being poisoned and they are covering up their crimes.<br><br>She needs to blow the whistle on the railroading of Darris or she can go down with the judge and prosecutor. |
| 11/23/2022 | If you have the balls to instruct the Marshall to cuff the judge and the prosecutor. We can surely get plenty of people to fill that place up with like minded people on the side of freedom. I guarantee we would outnumber them. |
| 11/23/2022 | You need to just arrest these bastards while I record it. We the people need to start taking communist down! I will bring the tarps and be there Monday. They have overstayed their visit here in this timeline. |

| 12/7/2022 | Without rod saying it, its as if he is telegraphinging whats happening or going to happen in the near future. He [Rod Class] said in a perfect world you go down to the Marshalls office and let them know whats up and they take the judge out to a tarp and shoot him in the back of the head and then they march over to the prosecutor and do the same. As if that may be the plan? They wouldnt tell us. Am i crazy? He then said you should come down here. EVENTUALLY THAT NEEDS TO HAPPEN SOMEWHERE TO SET THE TONE! Maybe it's planned and we don't know it? He also said like three times it's not like the military is going to send a memo when shit like that is going to go down. Is it on the docket for freaking Friday? Who knows. It's all a mystery. Then the news reports a judge and prosecutor were arrested and taken into custody. I have no clue. It's way above my paygrade. If he's going there it's gonna get real! |
|---|---|
| 12/7/2022 | This was basically a gift from the PBI. It's an appropriate gun to begin the end of tyranny and set the tone. I just saw a guy got his buinsess shut down 2 years after covid for not shutting down during covid. Sheriffs and cops all up in his place. If we make it happen in NC those guys would never do that crap.<br><br>If there is a 1% chance or greater that things might get to the level of using a tarp in NC on friday I NEED TO BE THERE. If you are buddies with the Marshall i need to be there. Please advise. |
| 12/7/2022 | I have a stack of tarps as well.<br>…<br>You arrange the meeting.  I would like to provide the gun to the trigger man. |
| 12/12/2022 | Getting close to arresting judge and prosecutor in NC.  Marshals were asking if Rod Class was taking down the judge on Friday at court. |

Similar statements following his guilty plea demonstrate that

Dever is not remorseful for his conduct.  The Defendant entered his

guilty plea in March 2023.  In April, a concerned federal inmate (hereinafter "CI") housed at the Transylvania County Jail with the Defendant contacted his attorney to report disturbing threats that Dever was making.  FBI agents interviewed the CI on April 25, 2023. The CI told them that Dever had been threatening violence against United States Attorney Dena J. King and others.  The Defendant repeatedly told the CI and other prisoners that he had connections in the United States Marshals Service and that a group of friendly "white-hat" marshals were going to break him out of jail and arrest several federal employees, including Judge Metcalf and members of the United States Attorney's Office.  The Defendant directed many of these statements toward U.S. Attorney King.  Dever was threatening to find out where she lived and where her children went to school so that he could arrest her and place her in a "FEMA camp" where she would be executed by being set on fire.  Regarding King, the Defendant told the CI that, "the bitch is going to get it."

The USMS corroborated the CI's account, in part, by reviewing the Defendant's recorded jail calls.  On April 8 and 10, 2023 (approximately two weeks after Dever's guilty plea), the Defendant spoke to a friend in

three separate phone calls about how U.S. Attorney King would be placed into a FEMA camp where she would be beheaded for treason using "electric guillotines." *See* Attachments D, E, and F, (jail call recordings).[2] While the friend did most of the talking, the Defendant agreed with all his violent suggestions — and then repeated the statements to the CI and others at the jail willing to listen. They also lamented that Dever was "captured by the enemy" and discussed how he eventually would be rescued from custody through military or U.S. Marshals' intervention. Dever's friend also promised to pardon the Defendant under his authority as the acting Governor of the State of Illinois.

Dever's ideology is violent and extreme; and his recent activities demonstrate that he is not remorseful, despite his guilty plea.

### An Upward Variance Is Necessary to Achieve the Statutory Goals for Sentencing

The Government recommends a sentence of 180 months' imprisonment. That sentence is sufficient but not greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a).

a. <u>The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant</u>

---

[2] These recordings were provided to the Court in advance of sentencing.

These are very serious crimes that directly affected over 900 victims and indirectly affected all Americans. For the reasons previously stated in this filing, the threats were far more substantial and impactful than is typical for this kind of offense.

Although the Defendant has no prior criminal history, the offense conduct involved months of planning, training, recruiting, writing, promoting, and execution. Both his public and private communications revealed that Dever has long harbored ill-will toward — and intended violence against — people who choose to serve their country and their communities. His post-plea conduct proves that he remains unremorseful.

   b.   <u>The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment</u>

The Defendant's contempt for the law is complete and total. His stated goal is the elimination of our system of laws and its replacement with secret courts, strict liability death sentences without due process, and mob justice (led, of course, by him). He believes that he stands above the law; the Court's judgment should be tailored to convince him otherwise — or, at least, convince others not to follow in his footsteps.

c.   The Need for the Sentence to Afford Adequate Deterrence to the Criminal Conduct

The Defendant's actions demonstrate that he is difficult to deter, perhaps because he believes the law does not apply to him. When Moody was arrested, Dever sought to obstruct justice in her case by barricading the jail with semi-trucks until they "released the prisoner of war." PSR, Doc. #148, p. 17. He then conspired with others to attempt to have the Court and the prosecutor arrested. And even after pleading guilty and appearing to accept responsibility, Dever hoped to escape from custody, have the Court and the prosecutor arrested, and, worst of all, have the United States Attorney murdered in a FEMA camp. Neither his pretrial detention nor the looming sentencing date has deterred Dever thus far, so the Court's judgment must be sufficient to make a stronger impression.

General deterrence is also important. The Defendant has recruited and trained his followers to act upon his violent beliefs and has commanded them to issue these threats and kidnap public officials. Adherents to Dever's poisonous thinking need to see that such actions have significant consequences.

d.    <u>The Need for the Sentence to Protect the Public from Further Crimes of the Defendant</u>

Dever is plotting to arrest public officials from his jail cell while awaiting this Court's judgment. He continues to talk to his followers about being rescued from custody and resuming his mission against the United States government. A substantial sentence will prevent him from acting upon his plans and victimizing more people.

e.    <u>Comparison to the Guideline Range</u>

A 180-month sentence would fall in an equivalent guideline range three levels higher than his current range, a modest variance under the circumstances. As previously discussed, the nature of the threats at issue is more severe than the heartland case and affected *far* more victims. Comparisons of threat severity are difficult to make using the guidelines, but accounting for the number of victims is easier. The guidelines assess a 2-level enhancement because the crime involved "more than two threats." U.S.S.G. § 2A6.1(b)(2)(A). Dever threatened more than 900 victims. The grouping unit increases offset this deficit slightly, but the current guideline range of 108–135 could be achieved by one who threatened only five victims. Recognizing this, the

Sentencing Commission suggests that upward departures should be considered for offenses that involve "multiple victims." U.S.S.G. § 2A6.1(b)(2). Appl. Note 4(A) and (B)(iv). "Multiple victims" is an understatement here. A 3-level upward departure or variance is modest under the circumstances.

A 3-level adjustment is comparable to another guideline: the hate crime or vulnerable victim enhancement found in U.S.S.G. § 3A1.1. That 3-level enhancement does not apply here because public servants are not a recognized protected class, yet there are similarities to the Defendant's conduct. Dever targeted a class of people due to their membership in the class and intended the threats to intimidate the entire class, not just those directly targeted. A 3-level enhancement here would be similar to what would be applied had he targeted 900 members of a protected class.

A 180-month sentence is reasonable when compared to his guideline range for conspiracy to commit kidnapping. The Defendant received a substantial benefit for pleading guilty and avoiding conviction in Count 58. The offense conduct set forth in the PSR establishes that Dever conspired with others and placed $10,000–20,000

bounties on the heads of public servants and instructed his followers how to collect by arresting them in their homes. The plan was to arrest hundreds of government workers, and the conspirators committed hundreds of overt acts in furtherance of that goal. His guideline range for a guilty plea to Count 58 would be 262–327 months.[3] A 180-month sentence remains substantially less than what Dever could be facing for his conduct.

## <u>Conclusion</u>

For the reasons set forth herein, the Government requests that the Court sentence the Defendant to 180 months' imprisonment.

---

[3] Base offense level 32 (§2A4.1(a)), plus 10 levels for "official victim" and "role in the offense" (§ 3A1.2 and § 3B1.1), minus 3 levels for acceptance of responsibility (§ 3E1.1). This range is achieved by conspiring to kidnap *just one person*.

RESPECTFULLY SUBMITTED, this the 17th day of August, 2023.

DENA J. KING
UNITED STATES ATTORNEY


/s/ Don Gast
_____

DON GAST
ASSISTANT UNITED STATES
ATTORNEY
N.C. Bar Number: 23801
100 Otis Street, Suite 233
Asheville, NC 28801
Telephone: (828) 271-4661
Facsimile: (828) 271-4670
Don.Gast@usdoj.gov


/s/ DAVID A. THORNELOE
ASSISTANT UNITED STATES
ATTORNEY
N.C. Bar number: 54463
100 Otis Street, Suite 233
Asheville, NC 28801
Telephone: (828) 271-4661
david.thorneloe@usdoj.gov