UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

_____ )
                                )
UNITED STATES OF AMERICA,        )
                                )
            vs.                  )      CASE NO. 1:22-CR-72-MR-WCM-1
                                )
                                )
TIMOTHY MICHAEL DEVER,           )
                                )
            Defendant.           )
_____ )

FRIDAY, MARCH 24, 2023
[DCR-Recorded Plea Hearing]
HELD IN ASHEVILLE, NORTH CAROLINA
BEFORE THE HONORABLE W. CARLETON METCALF
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES</u>:

<u>On Behalf of the Government</u>:

**DON GAST, Assistant U.S. Attorney**
**Office of U.S. Attorney - Western District of North Carolina**
**233 U.S. Courthouse Building**
**100 Otis Street, Suite 233**
**Asheville, North Carolina  28801**

<u>On Behalf of the Defendant</u>:

**HOWARD W. ANDERSON, III, Esquire**
**Truluck Thomason, LLC**
**3 Boyce Avenue**
**Greenville, South Carolina  29601**

| | |
|---|---|
| 1 | (Friday, March 24, 2023) |
| 2 | **P R O C E E D I N G S** |
| 3 | |
| 4 | (Open Court at 10:08 a.m.) |
| 5 | THE COURT:  The Court will call the case of United States |
| 6 | vs. Timothy Michael Dever.  Case No. 1:22-CR-72. |
| 7 | This matter has been noticed before me this morning for a |
| 8 | plea hearing. |
| 9 | Mr. Anderson, you have some documents there? |
| 10 | MR. ANDERSON:  Yes, Judge.  I have our signed addendum |
| 11 | that we use in this district, then also I have a report -- a |
| 12 | forensic psychological evaluation.  I had asked the Judge for some |
| 13 | funds because there had been some prior health issues for the |
| 14 | defendant and I want to make sure that -- while I thought he was |
| 15 | competent, I wanted to make sure that we weren't going to have any |
| 16 | problems down the road.  So the psychologist conducted a forensic |
| 17 | exam of him. |
| 18 | And as indicated on page 3 of the report, the |
| 19 | psychologist opines that he is competent to understand what's going |
| 20 | on and to enter a plea. |
| 21 | So I think that needs to be made part of the record, |
| 22 | which either we could do as just an attachment to the addendum or I |
| 23 | could file it on the docket.  However the Court wishes to proceed in |
| 24 | that regard. |
| 25 | THE COURT:  All right.  Has the Government received a |

1    copy of that?

2             MR. ANDERSON:  It has, your Honor, yes.

3             THE COURT:  Well, why don't you go ahead and hand that up

4    now along with the sealed addendum.

5             MR. ANDERSON:  Thank you.

6             THE COURT:  Mr. Gast, does the Government wish to be

7    heard on this issue, that is, the forensic psychological evaluation

8    I've just been handed?

9             MR. GAST:  No, your Honor.  The Government has no reason

10   to question the competency either.

11            THE COURT:  Any objection by the Government to the Court

12   reviewing this document?

13            MR. GAST:  No objection at all.

14            THE COURT:  All right.  Give me just a minute to review

15   what I've just been handed here.

16                         (Brief pause)

17            THE COURT:  All right.  Mr. Anderson, let me just state

18   back to you what I think you've told me just so I've got it clear

19   and it's clear for the record.  That is, you don't have any question

20   as to whether he is competent to move forward right now.

21            There's been no motion made, of course, about that from

22   your side, and neither from the Government.  And you've obtained

23   this forensic psychological evaluation just to confirm that he is,

24   in fact, competent to proceed, at least from Dr. Cantley's

25   standpoint.

1          MR. ANDERSON:  Correct, Judge.  Yes.  I thought it would

2    be good to have a second opinion.  But, yes, I have no concerns

3    about his competency at this point.  Thank you.

4          THE COURT:  Thank you.

5          I think procedurally the best thing to do would be to

6    submit that and have it filed along with the sealed addendum so that

7    references to his medical and/or psychological status can be in the

8    same place on the docket.

9          Now, I understand there was a separate document that's

10   been filed just a few moments ago, maybe half hour ago, by the

11   Government.

12         Mr. Gast.

13         MR. GAST:  Yes, your Honor.  The factual basis, which was

14   filed as Document No. 133, it references an exhibit.  There was an

15   attachment.  It was the same way was handled Ms. Moody's case, the

16   co-defendant, where we attached one of the writs at issue.

17         And I just discovered this morning that the attachment

18   had not been filed with the factual basis.  So the attachment of the

19   exhibit is now filed as Document No. 135.

20         I made Mr. Anderson aware of that oversight this morning

21   in the filing.  So Document 135 is a part of Document 133.

22         THE COURT:  Very well.  Thank you for that.

23         Mr. Anderson, any objection to that?

24         MR. ANDERSON:  No, your Honor.

25         THE COURT:  Madam Clerk, do you have a copy of that

1    newly-filed document?

2              MR. ANDERSON:  I have extra copies if the Court needs

3    one.

4              THE COURT:  I think we've got one right here.

5              MR. ANDERSON:  Okay.

6              THE COURT:  Anything further now from the Government

7    before I begin the Rule 11 proceeding?

8              MR. GAST:  No, your Honor.

9              THE COURT:  How about from the defendant?

10             MR. ANDERSON:  No, your Honor.

11             THE COURT:  Very well.  Thank you.

12             Mr. Dever, the Court is going to conduct a plea hearing

13   in your case this morning.  That is being held pursuant to Rule 11

14   of the Rules of Criminal Procedure.

15             During the course of this proceeding, I will be asking

16   you a number of questions.  Some of those questions will be in

17   writing, some of those questions will not be in writing.  It's

18   important for you to listen closely to each question that I ask and

19   that you answer each one truthfully and completely.

20             In order to assist you with the process of understanding

21   the questions that are in writing, I'm going to give you a copy of

22   those so that you and Mr. Anderson can follow along.

23             Marshal, if you would hand this packet down to the

24   defense table.

25             Also in that packet, Mr. Dever, is a separate document

1  which is called the addendum -- or, excuse me, the appendix.  And

2  we'll talk about that at the appropriate time in the proceeding.

3          Now, if at any time during this hearing you have any

4  trouble whatsoever hearing a question that I ask you or if you have

5  any trouble whatsoever understanding a question that I ask you, you

6  should bring that issue to Mr. Anderson's attention or to my

7  attention.  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  The Court is advised that you have filed a

10  written plea agreement with the Government in this case.  The Court

11  is required by the Federal Rules of Criminal Procedure to inquire

12  and advise you concerning that agreement.  The Court must ask you

13  some questions and you will be required to respond personally to

14  those questions under oath.

15          So I will now ask the clerk to administer the oath to

16  you.

17          Madam Clerk.

18          COURTROOM DEPUTY:  Sir, if you would please stand.  Place

19  your left hand on the Bible.

20      (The defendant, Timothy Michael Dever, sworn by the courtroom

21                              deputy)

22          THE DEFENDANT:  Yes.

23          COURTROOM DEPUTY:  Thank you.

24          THE COURT:  Let me make one final inquiry with the

25  Government and that is with regard to victim notes.

1          Mr. Gast.

2          MR. GAST:  Yes, your Honor.  All victims are in the

3  victim notification system and they've been notified.

4          THE COURT:  Very well, thank you.

5          Mr. Dever, do you understand that you are now under oath

6  and that you are required to give truthful answers to the questions

7  I am about to ask you?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that if you give false

10  information under oath, you may be prosecuted for perjury or false

11  statements?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you able to hear and understand my

14  questions?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Mr. Anderson, maybe you could push his mic

17  down, just point it toward him a little bit more, so we make sure we

18  get his answers on the record.  Thank you.

19          Mr. Dever, do you understand that you have the right to

20  have a United States District Judge conduct this proceeding?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Recognizing your right to proceed before a

23  District Judge, do you expressly consent to proceed in this court,

24  that is, before a United States Magistrate Judge?

25          THE DEFENDANT:  Yes.

1          THE COURT:  There has been presented to me a document

2    entitled Sealed Addendum to Entry and Acceptance of Guilty Plea

3    which provides information to me concerning your name, age,

4    education, use of drugs or alcohol and medical information.

5          Did you provide the information for the completion of

6    that document and did you sign that document?

7          THE DEFENDANT:  If that was the document -- yes, yes.

8          THE COURT:  Is all the information provided in the sealed

9    addendum true and accurate?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Now, as you've heard this morning, I've also

12    received a separate document, which is called the forensic

13    psychological evaluation dated March 22nd, 2023.  Have you received

14    a copy of that document?

15          MR. ANDERSON:  Judge, I don't believe that he has, but I

16    have one here for him.

17          THE COURT:  Do you, Mr. Dever, want any time to review

18    that document, which has been represented to me as being an opinion

19    given by a licensed psychologist regarding your competency?  Would

20    you like --

21          THE DEFENDANT:  Yes.  I would like to review it if I

22    could.

23          THE COURT:  All right.

24                    (Brief pause)

25          THE DEFENDANT:  I apologize for not recalling your name.

1    I have memory issues.

2              THE COURT:  That's all right.

3                        (Brief pause)

4              THE DEFENDANT:  Thank you.

5              THE COURT:  Have you had plenty of time to review the

6    forensic psychological evaluation?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Would you like any additional time to talk

9    with Mr. Anderson about that?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  To the extent that the forensic psychological

12   evaluation indicates that you provided information to the evaluator,

13   was that information true and accurate?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Is your mind clear and do you understand that

16   you are here today to enter a guilty plea that cannot later be

17   withdrawn?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  You'll see this in just a few minutes, Mr.

20   Anderson, but I'm just going to make a note on question 6 that the

21   forensic psychological evaluation is being filed as an attachment to

22   the addendum.

23                        (Brief pause)

24             THE COURT:  Do you understand that you have the right to

25   be represented by an attorney at every stage of your case?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Have you reviewed the Bill of Indictment with

3    your attorney and have you reviewed the plea agreement with your

4    attorney?

5          THE DEFENDANT:  Yes.

6          THE COURT:  From my examination of the plea agreement, I

7    am advised that you are pleading guilty to one or more counts as

8    contained in the Bill of Indictment.  Specifically, in the second

9    superseding Bill of Indictment.  It's my understanding from the plea

10   agreement that you wish to plead guilty to Counts One through Five

11   in that charging document so I'm going to focus your attention on

12   those counts at this time.

13         The superseding Bill of Indictment was filed in your case

14   on February the 8th, 2023, as Document No. 122.  Counts One through

15   Five allege as follows:

16         On or about the date set forth below -- or set forth in

17   the table below in Haywood County, within the Western District of

18   North Carolina and elsewhere, the defendant, Timothy Michael Dever,

19   knowingly and willfully did transmit, in interstate and foreign

20   commerce, communications, those being so called "Writs of Execution"

21   sent by fax and other means, containing threats to kidnap the

22   persons referenced in the table below, and did aid and abet Darius

23   Gibson Moody, Dee Thomas Murphy, and others known and unknown to the

24   Grand Jury in so doing.

25         The defendant transmitted and aided and abetted the

1   transmission of the communications for the purpose of issuing the

2   threats, and with knowledge that the communications would be viewed

3   as threats.

4           The table as to Counts One through Five indicates as

5   follows:

6           That Count One occurred on June the 24th, 2022, with the

7   victim's initials being GC.

8           That Count Two occurred on June the 25th, 2022, with the

9   victim's initials being JH.

10          That Count Three occurred on June the 27th, 2022, with

11  the victim's initials being SM.

12          That Count Four occurred on June the 27th, 2022, with the

13  victim's initials being GC.

14          And finally that Count Five occurred on June the 2nd,

15  2022, with the victim's initials being JWK.

16          All in violation of Title 18, United States Code,

17  Sections 875(c) and 2.

18          Are you pleading guilty to these offenses?

19                  (Brief pause)

20          THE COURT:  Mr. Dever, you have some question there?  If

21  you have some issue, as I said earlier, I suggest you talk to Mr.

22  Anderson if you have any question about what I've asked.

23          MR. ANDERSON:  Judge, I have a copy of the indictment

24  here that we're looking at.  The superseding indictment, rather.

25                  (Brief pause)

```
 1              MR. ANDERSON:  Thank you, Judge.

 2              THE DEFENDANT:  So -- yeah.  What is the question?  I

 3    suppose --

 4              THE COURT:  Let me go back to the question.  I'm on

 5    question 11.

 6              Before I do that, let me ask Mr. Anderson, do you need

 7    any further time to talk with Mr. Dever?

 8              MR. ANDERSON:  No, your Honor.  I'll just say that the

 9    indictment alleges that he both sent and aided and abetted.  The

10    factual basis that we have is just aiding and abetting.  I think

11    that could be the source of the confusion.

12              So we have a factual basis which describes what he did,

13    which is something of a narrowing as to what the indictment said.

14    So that was the issue.

15              THE COURT:  All right.

16              Mr. Gast, anything the Government wants to add on that

17    issue?

18              MR. GAST:  No, your Honor.

19              THE COURT:  All right.

20              Mr. Dever, I'm on question 11 once again.  Are you

21    pleading guilty to these offenses, specifically, Counts One through

22    Five, as stated in the second superseding Bill of Indictment that

23    I've just read?

24              THE DEFENDANT:  I'm agreeing to everything that's in the

25    factual basis, that is in the factual basis and the plea, but the
```

original indictment is not clearly written and I didn't go over that

with my attorney and so it seems a little bit -- I don't know -- not

very -- not necessarily accurate.

I'm agreeing to a plea that I'm guilty of aiding and

abetting, but the initial document has wording in there that isn't

really necessarily accurate.

THE COURT: Well, I'm not talking about the initial Bill

of Indictment that might have been filed in your case. Just to be

clear, I'm talking about the specific document that I just read a

few moments ago, the second superseding Bill of Indictment, and I

read Counts One through Five to you here on the record.

Are you telling me that your answer to my question, are

you pleading guilty to Counts One through Five, is no?

MR. ANDERSON: Judge, again, I think if I understood Mr.

Dever, the issue is that the indictment says that he both personally

sent and aided and abetted Ms. Moody in sending. The factual basis

for these counts is that he aided and abetted. It's legally the

same thing, but I think that his issue is that he doesn't want to --

again, he's agreeing with the facts -- and the factual basis would

certainly satisfy all the elements of the statute -- but, again, the

factual basis is somewhat narrower than the words that the Grand

Jury chose in forming Counts One through Five, but certainly it's

legally sufficient.

So I think that's his -- as he's trying to say, that he

agrees to the factual basis. He agrees that sets forth that's what

he did, which is something of a narrowing as to what the Grand Jury
said.

　　　　　　　　THE DEFENDANT:  Exactly.

　　　　　　　　　　　(Brief pause)

　　　　　　　　THE COURT:  I'm inclined to pause the hearing at this
point and let Mr. Anderson and Mr. Dever talk about that in more
detail because the question is a straightforward one:  Is he
pleading guilty to Counts One through Five.

　　　　　　　　And he's -- I recognize Mr. Anderson's position there,
but if there's some question about whether the Bill of Indictment --
second superseding Bill of Indictment accurately reflects the
charge, how it's been stated -- and if he's not admitting to that,
if he's not pleading guilty to that -- I think that could be an
issue.

　　　　　　　　Mr. Gast, what do you think about that?

　　　　　　　　MR. GAST:  Well, I certainly don't have any objection to
giving the defendant a few more minutes to speak to counsel with
respect to whether the -- I want to be clear on the record, the
factual basis doesn't narrow the charge.  The charge is what the
charge is.  The factual basis explains how he is guilty of the
charge.

　　　　　　　　I will also note for defendant's benefit that federal law
requires the Government to allege in the conjunctive but prove in
the disjunctive.  And so the fact that it says sent or aided and
abetted in sending is sufficient to lay out the charge and

1    sufficient to sustain a conviction even on an aiding and abetting

2    theory. But that's probably best for Mr. Anderson to explain to the

3    defendant.

4          THE COURT: And that's the question I think or the issue

5    that might be helpful to give Mr. Anderson and the defendant time to

6    talk about in a little further detail.

7          Just for both parties' reference, too -- we haven't

8    gotten to this point, but if we get to the appendix -- I will let

9    the defendant know, there isn't an aiding and abetting reference

10   specifically in the appendix. It's not just the elements of the

11   charge, it's the elements plus the -- what the Government would have

12   to prove on an aiding and abetting theory, which is what looks like

13   to me is what the Government is pursuing here.

14         So this is a significant issue, obviously. That is, the

15   guilty plea is a significant issue for the defendant and I want to

16   make sure he understands fully what he's doing and has had plenty of

17   time to talk about this. So I'm going to take a break here for a

18   few minutes.

19         Mr. Anderson, this is the last case on the calendar so

20   there's no case behind you here. Take what time you need and let

21   the clerk know when you're ready to proceed.

22         MR. ANDERSON: And, Judge, it might be easier if I can

23   talk to him back there so that we're not having to whisper to each

24   other.

25         THE COURT: That'll be fine. All right.

```
1            MR. ANDERSON:  Thank you, Judge.
2            THE COURT:  We'll be in recess for approximately
3    15 minutes, but if you need longer than that, let us know.
4        (Recess commencing at 10:34 a.m. and concluding at 10:49 a.m.)
5                    (Open Court at 10:49 a.m.)
6            THE COURT:  All right.  Mr. Anderson, have you had plenty
7    of time to talk with Mr. Dever now?
8            MR. ANDERSON:  Yes, your Honor, and we're prepared to
9    proceed.
10           THE COURT:  All right.  That was my next question then.
11   Very well.
12           Mr. Dever, recalling you are still under oath, I'm now
13   back to question 11.  Are you ready to proceed with the hearing?
14           THE DEFENDANT:  Yes, sir.
15           THE COURT:  All right.  Are you pleading guilty to the
16   offenses that I described just a few moments ago, that is, before
17   the break, that is, Counts One through Five in the second
18   superseding Bill of Indictment?
19           THE DEFENDANT:  Yes, your Honor.  I am guilty of Counts
20   One through Five based on the facts set forth in the factual basis.
21           THE COURT:  Mr. Gast, does the Government have any
22   objection to that qualification?
23           MR. GAST:  No, your Honor.  I think that's true and
24   accurate.
25           THE COURT:  All right.
```

I'm now going to advise you, Mr. Dever, of the relevant statute, the essential elements of the offense and the associated penalties. You'll find that information on the appendix that I handed down previously. It begins at page 12 of that packet.

Counts One through Five have been charged pursuant to 18 U.S. Code, Section 875, Subsection (c), which reads as follows:

Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

The essential elements of this offense, that would be the things the Government would have to prove in order to obtain a conviction in your case, would be as follows:

1. That you knowingly transmitted a communication in interstate or foreign commerce;

2. That you subjectively intended the communication as a threat; and

3. That the content of the communication contained a true threat to kidnap or injure.

To be convicted of violating this section on an aiding and abetting theory, the Government must show:

1. That you took an affirmative act in furtherance of the underlying offense; and

2. That you did so with the intent of facilitating the offenses commissioned.

1          I'm also required by law to advise you concerning the

2   maximum and minimum penalties prescribed by law for each count of

3   this offense.  As I indicated, there are Counts One through Five

4   contained in the plea agreement referenced therein.

5          The maximum possible penalty per count is a term of

6   imprisonment of not more than five years, a fine not to exceed

7   $250,000, a term of supervised release of not more than three years

8   and a one hundred dollar special assessment.

9          Mr. Gast, does the Government concur with the Court's

10  recitation of the elements and the penalties?

11          MR. GAST:  Yes, your Honor.

12          THE COURT:  And does the defense concur as well, Mr.

13  Anderson?

14          MR. ANDERSON:  I do, your Honor.

15          THE COURT:  Thank you.

16          And if you would, Mr. Dever, execute the appendix where

17  indicated.

18                          (Brief pause)

19          THE COURT:  I'm now back to the main Rule 11 document.

20  I'm on question 12.

21          Do you fully understand the charges against you,

22  including the maximum, and where applicable, minimum penalties as

23  I've just read them to you?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand each element of the

offenses charged?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that upon a plea of not guilty, the Government would be required to prove each element of the offenses charged beyond a reasonable doubt?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that the Government would be required to prove that the unlawful acts were committed knowingly, willfully, intentionally and unlawfully?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that if you are not a citizen of the United States, your guilty plea may result in your deportation from this country, your exclusion from admission to this country or the denial of your naturalization under federal law?

THE DEFENDANT:  Yes.

THE COURT:  If the District Court imposes an active term of imprisonment of more than one year, the District Court will also be required to order a term of what is called supervised release. And a term of supervised release may be ordered in other circumstances.

This means that after a defendant is released from prison, there are certain terms and conditions he or she will be required to follow.

The length of supervised release usually ranges from one to five years, but may be more or less than that for certain

offenses.

Do you understand the term "supervised release" as I've explained it to you?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that if you violate the terms and conditions of supervised release, you could be returned to prison for an additional period of time?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that parole has been abolished in the federal system and if you were sentenced to a term of imprisonment, you will not be released on parole?

THE DEFENDANT:  Yes.

THE COURT:  Have you and your attorney discussed how the United States Sentencing Guidelines may apply in your case?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand how the United States Sentencing Guidelines may apply to you?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that the District Court will not be bound by the sentencing Guidelines but, nonetheless, must consult those Guidelines and take them into account when sentencing?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that the sentence the District Court will impose will be within the statutory limits and

1  in the District Court's sound discretion and could be greater or

2  less than the sentence as provided for by the Guidelines?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Do you understand that the probation office

5  will prepare a pre-sentence report that contains Guidelines

6  calculations and that both you and the Government will have an

7  opportunity to object to any alleged deficiencies in that report?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Do you understand that in some circumstances,

10 you may receive a sentence that is different, that is, either higher

11 or lower than that called for by the Guidelines?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand that if the sentence is

14 more severe than you expect or the District Court does not accept

15 the Government's sentencing recommendation, you will still be bound

16 by your plea and will have no right to withdraw the plea of guilty?

17          THE DEFENDANT:  Yes.

18          THE COURT:  The District Court has the discretion in

19 appropriate circumstances to order you to make restitution to any

20 victim of any offense.  The District Court may also, in the

21 appropriate circumstance, require you to pay the cost of your

22 confinement in prison or costs of supervision or special

23 investigative costs or all of these costs.

24          The District Court may also require you to forfeit

25 property involved in the offense.

1          Do you understand these things?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that you have a right to

4   plead not guilty, to have a speedy trial before a judge and jury, to

5   summons witnesses to testify on your behalf and to confront

6   witnesses against you?

7          THE DEFENDANT:  Yes.

8          THE COURT:  If you were to exercise your right to trial,

9   you would be entitled to the assistance of an attorney.  You would

10  not be required to testify.  You would have the right to testify

11  voluntarily, to present evidence at trial and to compel the

12  attendance of witnesses.

13         You would be presumed innocent and the burden would be on

14  the Government to prove your guilt beyond a reasonable doubt.

15         Do you understand all of these rights?

16         THE DEFENDANT:  Yes.

17         THE COURT:  By entering a plea of guilty, you forfeit and

18  waive, that is, you give up, your right to plead not guilty, the

19  right to a trial by jury and at that trial, the right to the

20  assistance of counsel, the right to confront and cross-examine

21  witnesses against you, the right against compelled

22  self-incrimination, the right to testify voluntarily on your own

23  behalf and to present evidence at trial.  The right to compel the

24  attendance of witnesses and any other rights associated with a jury

25  trial.

1        By entering this plea of guilty, you are waiving, again

2    that means you're giving up, all of these rights.  A trial will not

3    be held.  If your plea of guilty is accepted, there will be one more

4    hearing where the District Court will determine what sentence to

5    impose.

6        Do you understand all of these things?

7        THE DEFENDANT:  Yes.

8        THE COURT:  Are you, in fact, guilty of the counts in the

9    Bill of Indictment to which you have come to court today to plead

10   guilty; that is, did you commit the acts described in Counts One

11   through Five of the superseding Bill of Indictment to which you are

12   pleading guilty?

13       THE DEFENDANT:  Yes.

14       THE COURT:  Is your plea of guilty voluntary?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Other than the promises contained in the

17   written plea agreement, has anyone made any promise to you or

18   threatened you in any way to cause you to enter this plea of guilty

19   against your wishes?

20       THE DEFENDANT:  No.

21       THE COURT:  Do you enter this plea of guilty of your own

22   free will, fully understanding what you're doing?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Are you aware that a separate document called

25   the factual basis has been filed as an attachment to your plea

1   agreement?

2             THE DEFENDANT:  Yes.

3             THE COURT:  The Court will now recognize the Government

4   to present the factual basis.

5             Mr. Gast.

6             MR. GAST:  Thank you, your Honor.

7             The factual basis has been filed with the plea as

8   Document No. 133, and as I explained when we started, also

9   supplemented with an exhibit that is Document 135.

10             It's a little bit long, I would normally summarize it,

11   but to avoid any confusion, I'm going to read all the substantive

12   paragraphs in their entirety starting with paragraph 1 -- or

13   numbered paragraph 1.

14             At all relevant times, Darris Gibson Moody was a resident

15   of Waynesville, North Carolina, in Haywood County, within the

16   Western District of North Carolina.  Timothy Michael Dever was a

17   resident of Naperville, Illinois, in the Northern District of

18   Illinois.

19             In the summer of 2022, Moody obtained documents titled

20   "Writs of Execution" (hereinafter "the writs"), which she addressed

21   and transmitted via fax to at least 57 individuals living in the

22   Western District of North Carolina and elsewhere.  The writs stated

23   that the individuals named on them had been convicted of various

24   crimes and upon service by fax, the individuals would be subject to

25   arrest and judicial sentencing by the "Environmental District

Court."  The writs stated that the individuals could be punished by multiple years of imprisonment, by fines and possibly by death.  The writs provided that a monetary reward was available to any citizen who conducted a "citizen's arrest" upon the recipient.

Moody downloaded these writs from a website promoting the self-styled "People's Bureau of Investigation," or "PBI."  Timothy Michael Dever hosted, maintained, and provided content for the PBI website.

Dever made the writs available for download on the website, along with documents and videos explaining their purpose and how to serve them.  Dever referred to the writs as the "MOAB" (an acronym that typically means, "Mother of All Bombs") and promoted the writs as a mechanism for removing federal, state, and local officials from their positions.

Dever also maintained a list on the PBI website where members of the group could post the names, addresses, and personal information about the victims whom they served with these writs. Moody used this website feature to post this information about her victims.

Dever's website contained -- also contained a link to one or more PBI-related Telegram channels.  "Telegram" was a digital app that permitted encrypted text messaging and chat rooms or ("channels").  The PBI website sponsored links to a Telegram channel open to the public and at least one private Telegram channel that one could only join with Dever's permission or another

administrator.  Moody and others used these channels to exchange
ideas and discuss the creation, use, and service of the writs.
Dever and Dee Thomas Murphy frequently posted about the writs and
their intent to arrest public officials.  For example, one of the
"pinned" messages (a pin is a message that was marked by a moderator
as a priority message that would appear at the top of the list)
advised that the writs were "how we put the enemy in Gitmo where
they belong," and, "IT'S ROUND UP TIME."  Another pinned message
purported to explain how citizens would recover the $10,000 or
$20,000 rewards for arresting government officials through fines
against the victims or directly from the U.S. Treasury.  Also pinned
was another message with instructions and links regarding how to
conduct research online for personal identifying information of
public officials.  Regarding arrests, Murphy posted that it will be
up to the "bounty hunters," and asserted, "I have a lot of guys
there just waiting to start these arrests and collect that money.
They've been waiting for about 5-6 years now."  Murphy further
explained, "[t]he arrest team shall be teams of 12," and that, "we
have near 500 that are ripe for arrest."

One example of the materials available on the PBI website
was a video recorded in a radio talk show format entitled, "How to
Lawfully Arrest a Sheriff, a judge, a President, a governor, a
mayor, a Congressman, Fauci, Gates, media CEO'S...ALL are convicted
in the highest court of the land!"  The recorded show, first posted
to the PBI website via YouTube link on or about March 23rd, 2022

(and pinned as a must-view item on PBI's website), was approximately 1 hour and 17 minutes long. It featured Dever interviewing Murphy about various topics and discussed at length the use of the writs to remove public officials from office, either voluntarily or by a citizen's arrest.

And the Government added a footnote that says that the Government would provide the entire video and a transcript to the Court prior to the sentencing.

I'm now on paragraph 8.

Moody used the writs and the instructions she received from Dever and Murphy to transmit the threats. Specifically, Moody used fax software called "Efax" and "Humble Fax" to send the writs. She sent the writs from her computer at home and they were transmitted via the Internet to the recipients at their fax machines. Many of the individuals who received the writs were government officials or employees.

On June 24th, 2022, Moody sent a writ of execution via fax through the Internet to victim "GC." A redacted version of the document sent by Moody without GC's identifying information is attached as Exhibit One.

And again, to be clear, that's Document 135 that was filed separately this morning.

The writ stated that a person who made a "citizen's arrest" upon GC would be authorized and rewarded $10,000.

On June 25th, 2022, Moody sent a writ of execution via

fax through the Internet to victim "JH."  The writ was nearly identical to that attached as Exhibit One.  The writ stated that a person who made a "citizen's arrest" upon JH would be authorized a reward of $10,000.

On June 27th, 2022, Moody sent a writ of execution via fax through the Internet to victim "SM."  The writ was nearly identical to that attached as Exhibit One.  The writ stated that a person who made a "citizen's arrest" upon SM would be authorized a reward of $10,000.

On June 27th, 2022, Moody sent a writ of execution via fax through the Internet to victim "GC."  The writ was nearly identical to that attached as Exhibit One.  The writ stated that a person who made a "citizen's arrest" upon GC would be authorized a reward of $10,000.

On July 2nd, 2022, Moody sent a writ of execution via fax through the Internet to victim "JWK."  The writ was nearly identical to that attached as Exhibit One.  The writ stated that a person who made a "citizen's arrest" upon JWK would be authorized a reward of $20,000 because JWK was a bar attorney.

The writs constituted true threats in that they threatened victims with arrest, imprisonment, fines, and possibly death.

Moody, aided and abetted by Dever, sent the threats for the purpose of issuing them, and Moody and Dever knew that the communications would be viewed as threats.

1          The Internet is a facility of interstate commerce and the

2   threat moved in interstate commerce.

3          And Exhibit A, Document 135, is incorporated into the

4   factual basis.  I will not read that as that's a document familiar

5   to the defendant, but that's part of the factual basis.

6          THE COURT:  Thank you.

7          Mr. Anderson, is there any objection to the presentation

8   of the factual basis?

9          MR. ANDERSON:  No, your Honor.

10          THE COURT:  Thank you.

11          Mr. Dever, have you read the factual basis in its

12   entirety or had it read to you and/or translated for you and do you

13   understand it and agree with it?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you certify, stipulate, and agree that all

16   the information in the factual basis is true and accurate?

17          THE DEFENDANT:  Yes.

18          THE COURT:  If this matter were to proceed to trial,

19   would the Government be able to prove the statements in the factual

20   basis beyond a reasonable doubt?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that entering a plea of

23   guilty to a felony charge may deprive you, at least for a time, of

24   certain civil rights such as the right to vote, hold a public

25   office, serve on a jury and possess a firearm?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Is your willingness to plead guilty the

3    result of prior discussions between your attorney and the attorney

4    for the Government?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Have you and the Government entered into a

7    plea agreement in regard to this case?

8          THE DEFENDANT:  Yes.

9          THE COURT:  The Court will now recognize the Government

10   to present the terms of that agreement.

11         Mr. Gast.

12         MR. GAST:  Yes, your Honor.  Thank you.

13         Your Honor, all the terms and conditions of the plea are

14   set forth in the written plea agreement filed as Document No. 134,

15   which the parties have signed.  All those terms and conditions are

16   important.  I'll simply summarize the highlights of the agreement.

17         The defendant agrees to enter a voluntary plea of guilty

18   to Counts One through Five as set forth in the second superseding

19   Bill of Indictment and admit to being, in fact, guilty as charged in

20   Counts One through Five as he has just done.

21         If the Court finds the defendant's plea to be voluntarily

22   and knowingly made and accepts the plea, then the United States will

23   move at the appropriate time to dismiss Counts Six through 58 of the

24   second superseding Bill of Indictment as to this defendant.

25         With respect to sentencing, the parties agree to jointly

1  recommend to the Court the following:

2  That pursuant to Guideline Section 2A6.1(a)(1), the base

3  offense level is 12.

4  That the offense involved more than two threats and,

5  therefore, a two-level enhancement applies pursuant to

6  2A6.1(b)(2)(A).

7  That the victims were government officers or employees,

8  and that the offense was motivated by the victims' status as such,

9  therefore, a six-level enhancement applies under Guideline Section

10  3A1.2(b).

11  The United States agrees that if the defendant is found

12  by the Court to have accepted responsibility pursuant to

13  Section 3E1.1(a) of the Guidelines, the United States will

14  acknowledge the defendant's entry of a guilty plea as timely for the

15  purposes of 3E1.1(b) if that section applies to the defendant.

16  The parties agree that either side may argue their

17  respective positions regarding any other specific offense

18  characteristics, cross-references, special instructions, reductions,

19  enhancements, departures, and adjustments to the offense level.

20  The parties also agree that either party may seek a

21  departure or variance from the "applicable Guideline range"

22  determined by the Court at sentencing, if such departure or variance

23  is permitted by law.  And there is some notice requirements in that

24  provision of the plea agreement if they intend to do so.

25  In addition to waiving his rights to a jury trial, the

defendant has agreed to waive all his appellate rights except for those explicitly reserved by the plea agreement. Those being claims of ineffective assistance of counsel or prosecutorial misconduct claims.

The defendant also agrees to provide assistance to the Government if called upon to do so. The parameters for that assistance are set forth in Section VI of the plea agreement.

Those are the highlights of the agreement, your Honor.

THE COURT: Thank you.

Is there any objection to the presentation of the plea agreement?

MR. ANDERSON: No, your Honor.

THE COURT: Thank you.

Mr. Dever, do you understand and agree with the terms of the plea agreement as they've just been explained to you?

THE DEFENDANT: Yes.

THE COURT: Is this your signature on the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Have you discussed your right to appeal with your attorney and do you understand that the plea agreement in this case provides that you may not appeal your conviction or sentence or contest the same in a post-conviction proceeding unless it is on the grounds of prosecutorial misconduct or the ineffective assistance of counsel?

THE DEFENDANT: Yes.

1          THE COURT:  Do you knowingly and willingly accept this

2    limitation on your right to appeal and to file post-conviction

3    proceedings?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand what those waiver

6    provisions mean?

7          THE DEFENDANT:  Yes.

8          THE COURT:  You've had a chance to talk with Mr. Anderson

9    about that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Have you had ample time to discuss with your

12    attorney any possible defenses that you may have to the charges and

13    have you told your attorney everything you want him to know about

14    this case?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Mr. Anderson, have you reviewed each of the

17    terms of the plea agreement with the defendant and are you satisfied

18    that he understands those terms?

19          MR. ANDERSON:  I have and I am, your Honor.

20          THE COURT:  Thank you.

21          Mr. Dever, are you entirely satisfied with the services

22    of your attorney?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Are you telling the Court that you know and

25    fully understand what you are doing; that you have heard and

 1   understood all parts of this proceeding; and that you want the Court
 2   to accept your plea of guilty?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  Do you have questions, statements or comments
 5   to make about anything brought up or discussed in the course of the
 6   proceeding?  If you do, I'll be happy to try to answer your
 7   questions or I'll be glad to hear any statements or comments that
 8   you want to make.

 9              THE DEFENDANT:  No, sir.

10              THE COURT:  What's going to happen now, Mr. Dever, is
11   this:

12              As you have been giving me your answers to these
13   questions, I've been marking them on this form.  It is, of course,
14   the same form and you Mr. Anderson have in front of you.

15              I want to make sure that your answers have been marked
16   one hundred percent correctly so in just a moment, I'm going to hand
17   this original document down to you and I'll give you and Mr.
18   Anderson whatever time you all need to check it over and review it
19   and make sure that it does accurately reflect your answers in this
20   case.

21              Marshal, if you would hand that down to the defense
22   table.

23                        (Brief pause)

24              THE COURT:  I have received the Rule 11 document now back
25   from the defense table.

1       Mr. Dever, did you have plenty of time to check over that
2  document with Mr. Anderson for accuracy?
3               THE DEFENDANT:  Yes.
4               THE COURT:  Were all of the answers as marked true and
5  accurate, that is, did they accurately reflect your position in the
6  case?
7               THE DEFENDANT:  Yes.
8               THE COURT:  Were there any mistakes, errors or changes
9  that need to be addressed?
10              THE DEFENDANT:  No, sir.
11              THE COURT:  As indicated previously, I've received and
12 reviewed the sealed addendum, which has been executed by the
13 defendant and counsel.
14              I now have the Rule 11 document signed by them as well as
15 the appendix, also signed by Mr. Dever and Mr. Anderson.
16              Based upon the representations and answers given by the
17 defendant and counsel in the foregoing Rule 11 proceeding, the Court
18 finds that the defendant's plea is knowingly and voluntarily made
19 and that the defendant understands the charges, potential penalties
20 and consequences of his plea.
21              The Court further finds that the defendant's plea is
22 supported by an independent basis in fact containing each of the
23 elements of the offenses to which the defendant is pleading.  Those
24 would be Counts One through Five in the second superseding Bill of
25 Indictment.

 1                    Based thereon, the defendant's plea is hereby accepted.

 2                    In addition, I recommend that the District Court accept

 3     the defendant's plea and enter judgment thereon.

 4                    The parties are advised that if they have any objection

 5     to this recommendation, they have 14 days to file any such

 6     objections in writing with this Court.  If they fail to object

 7     within that 14-day period, it will be deemed a waiver of any such

 8     objection.

 9                    I've executed the Rule 11 document.

10                    Madam Clerk, let me hand that to you now along with the

11     appendix and the sealed addendum, including the attachment, being

12     the psychological report.

13                    And also I'll note for the record the defendant's

14     presentence interview request form.

15                    Now, Mr. Gast, will there be anything further from the

16     Government in this matter?

17                    MR. GAST:  No, your Honor.  Thank you.

18                    THE COURT:  How about from the defendant?

19                    MR. ANDERSON:  Not at this time, your Honor.

20                    THE COURT:  Very well.

21                    Then that will conclude all the matters in Mr. Dever's

22     case for today.

23                    MR. ANDERSON:  Thank you, sir.

24                    THE MARSHAL:  All rise.

25                    THE COURT:  Hold on one moment.  Let me ask the

1   Government one question.

2           Do you have anything further, Mr. Gast?  This is the last

3   case on the calendar.

4           MR. GAST:  Nothing further.  Thank you.

5           THE COURT:  Very well.  Now, Marshal.

6

7

8                   (Hearing concluding at 11:14 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF NORTH CAROLINA

3

4                  CERTIFICATE OF OFFICIAL REPORTER

5

6              I, Michelle A. McGirr, RMR, CRR, CRC, Federal

7    Official Court Reporter, in and for the United States District Court

8    for the Western District of North Carolina, do hereby certify that

9    the foregoing transcript is a true and accurate transcription from a

10   recording to the best of my ability.

11

12   Dated this 9th day of October, 2023

13

14                              /s/  Michelle A. McGirr
                                MICHELLE A. McGIRR
15                              RMR, CRR, CRC
                                U.S. Official Court Reporter
16

17

18

19

20

21

22

23

24

25